State *vs.* Price.

(Decided June 1st, 1864.)

---

## THE STATE OF MARYLAND *vs.* JOHN PRICE.

COUNTY COMMISSIONERS—PUBLIC ROADS: ACT OF 1822, CH. 18.—The county commissioners under the Act of 1822, ch. 18, had authority to open, on petition, any new road which, in their opinion, would conduce to the advantage and convenience of the public; and (whether a supervisor is appointed or not) a road opened from a common thoroughfare in virtue of

that authority, is a public road in contemplation of the Act, even if it does not connect with another highway nor lead to a mill, market or church.

PUBLIC ROADS.—It is true, however, that a road to which the public can have no access by a public highway, cannot·in the nature of things be public, and at most would serve only the purposes of private convenience.

PLEADING: INDICTMENT FOR OBSTRUCTING A PUBLIC ROAD: VARIANCE.— The offence charged in the 1st count of an indictment, was, the obstruction of a *road* leading from S's gate to B's house; and in the 2nd count, the obstruction of a road leading from S's gate *toward* the turnpike. The plea, after stating by way of inducement that the road commenced and ended on private property without connecting with any public thoroughfare, denied that it was a *public road.* The replication answered, that the road was opened from S's gate *to* the turnpike, and that it was a public road. On demurrer to the replication, HELD:

1st. That the averment of the replication was a clear departure from the indictment.

2nd. The general rule is, that when the Act in itself is not necessarily unlawful, but becomes so by its peculiar circumstances and relations, all the matters must be set forth, in which the illegality consists.

3rd. The willful obstruction of a road or way constitutes an indictable offence only when the road or way is public, and the obstruction tends to the inconvenience of the common right to use it.

4th. The connection of the road with some other common thoroughfare, by means of which the public should have access to it was a necessary element of the offence charged; and it should have been shown with certainty, so that the Court could have seen that the indictment was had upon a sufficient case.

5th. And especially was this necessary to inform the defendant of what he had to answer, as well as to enable him to plead the acquittal or conviction to any subsequent indictment.

WRIT OF ERROR from the Circuit Court for Harford County.

This was the case of an indictment for obstructing a public road. The facts of the case are fully stated in the opinion of the Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*George Y. Maynadier* and *Henry W. Archer,* for the appellant, argued:

1st. That the county commissioners have full power to open any new roads, as in their opinion may be most to the advantage of the public, and whether a road be a *cul de sac,* or a thoroughfare, they have equal power to open it. Act of 1822, ch. 18. *Rugby Charity vs. Merryweather,* 11 *East.,* 375, n. a. *Bateman vs. Bluck,* 14 *Eng. Law & Eq. Rep.,* 69.

2nd. That this road is substantially a thoroughfare. It leads from the Baltimore and Philadelphia turnpike to the lime-kilns and quarries at Standiford's gate, and from that point, as averred in the replication, the public had enjoyed for over twenty years, free and uninterrupted access to the Belair and Abingdon road.

3rd. That the uninterrupted user of this road for twenty years, as averred in the replication, is sufficient to perfect the right of the public to it as a public road, and cure any irregularity, if any there be. *City of Cincinnati vs. White,* 6 *Peters,* 440. *Regina vs. Perrie,* 30 *Eng. Law & Eq. Rep.,* 207. *Denning vs. Roome,* 6 *Wendell,* 650. *Colden vs. Thurbur,* 2 *Johns. Rep.,* 424. *Pritchard vs. Atkinson,* 4 *N. H.,* 1. *Hobbs vs. Lowell,* 19 *Pick,* 405.

4th. That the defendant is estopped by his acts, in accepting the damages and inducing the commissioners to expend money on the road, from now denying their right.

*Otho Scott,* for the appellees:

*First Point.*—The commissioners have no power to open a road except on the petition in writing of a number of respectable inhabitants of their county, and the petition must be pursued, as it is that alone which gives them power to act. A petition for a continuous road does not give the power to open a part of that road, and though the petition might be for a road on a certain point on a turnpike to Standiford's gate, and thence to a point on the Belair and Abingdon road, the commissioners had no power to open either end stopping at Standiford's gate. Act 1821, ch. 152. *Williamson vs. Carnan,* 1 *G. & J.,* 184. *Barrickman*

*vs. The Comrs. of Harford Co.*, 11 *G. & J.*, 50. The power of the commissioners to amend must be confined to slight alterations, and must conform to the prayer of the peti-·tioners. They cannot open a different road from that prayed for.

*Second Point.*—The Act of 1794, ch. 52, sec. 7, requires the appointment of supervisors on all the public roads; the 9th section makes the supervisors responsible for keeping the roads in repair. The fact that no supervisor was ever appointed, shows the commissioners never regarded it as a public road. The not appointing a supervisor for twenty years, would be conclusive evidence of the abandonment of a public road. When it has no supervisor for any considerable length of time, it ceases to be public, because there is no one to repair it.

*Third Point.*—This road, conceding that it was open from Berry's house to the turnpike, still terminated at Mr. Standiford's gate, so that but one end of it connected with the public highway. This formed what is called a *cul de sac.* At common law there could be no highway unless it was a thoroughfare, that is, connected with a public highway at each end, so decided by Lord Hale in Austin's case. 1 *Ventris*, 189. The same doctrine is stated in 1 *Hawkins' Pleas of the Crown, ch. 76, sec. 1.* So stood the common law until 1790, when Lord Kenyon intimated a different doctrine as it regarded streets in a town.. The case of *Bateman vs. Bluck*, 14 *Eng. Law & Eq. Rep.*, 69, relates also to a street in London, and has no application to a country road. The opinion of Lord Kenyon in the *Rugby Charity vs. Merryweather*, reported in a note, 11 *East*, 375, is doubted by the Court in *Woodyear vs. Haddon*, 5 *Taunton*, 126, and these doubts are repeated in *Wood vs. Veal*, 5 *Barn. & Adol.*, 454. These last two cases leave no doubt that the old common law doctrine as stated by Hale and Hawkins, is still the law as regards highways in the country. It will be seen by reference to the English cases, that the only question was, whether a street in a town which

was not open at both ends could be a highway, and those judges who have intimated that it could, were evidently influenced by the fact of its being a street in a town. Some of the streets of this description were lighted and paved, and still there was controversy whether they were highways. No English case has been found which intimates that a *cul de sac* in the country can be a highway, and from the doctrine in 5 *Taunton* and 5 *Barn. & Adol.*, in each of which cases the judges give their opinions *seriatim*, it would seem that the law was settled, that a *cul de sac* in the country could not be a highway.

It is not contended that the road should connect at each end with a highway of the same description, if it connects with any highway at each end it is not a *cul de sac;* it may connect with navigable water or any other kind of highway. The common law at the time it was adopted in this State, was as we contend for it, and there is no evidence that it has been changed in England as applicable to a road like this. We do not discuss the application of this doctrine to streets in a town; so many persons may reside in a town on a street open at but one end, that a different rule might be applied to them from that which would be applicable to a road in the country. The cases cited on the other side relate to streets in towns, or to where the road terminated at a navigable highway. The mere controversy in these cases shows that there is such a thing as a *cul de sac*, and if there be such a thing, what is it if the road in this case is not one?

According to the pleadings the road from Standiford's gate to the turnpike was one mile and one hundred and forty perches long, and passed through the lands of but five persons, so that there could be no travel on it except by persons going to or from these five land-holders, and none of them appear to be engaged in any business which requires any more travel to or from their houses than is necessary to any other private individual.

*4th Point.* The indictment should state the *termini* of the road with certainty, so that the party may know what he has to answer, and also that he could plead the acquittal or conviction to another indictment. The averment, "toward the turnpike," is too indefinite, it cannot mean to the turnpike, nor does it give the defendant any knowledge of the distance of the turnpike, or how near it goes toward it. The other count which states it to terminate at Berry's house, would, from the facts to be gathered from the pleadings, show that neither end of the road connected with the highway.

For the manner of describing the *termini* of a highway, see 2 *Chitty's Crim. Law*, 579.

COCHRAN, J., delivered the opinion of this Court:

This case was brought up by writ of error from the Circuit Court for Harford County, the defendant in error, having been indicted for obstructing a highway. The indictment contains two counts, one of which describes the obstructed road as a "common highway, leading from "Sarah Standiford's gate toward the Baltimore and Philadelphia turnpike, to the house known as Berry's house;", and the other as a "common highway leading from Sarah Standiford's gate toward the Baltimore and Philadelphia turnpike." The defendant in error, for special matter of defence, pleaded, that on a petition of certain citizens for a continuous road from the Bel Air and Abingdon road to the Baltimore and Havre de Grace turnpike, the county commissioners ordered the road, laid out in conformity with the petition, to be opened from Standiford's gate to the turnpike; but that said road never was opened except from Standiford's gate to Berry's house, and that no supervisor was ever appointed thereon; that the portion of the road so opened commences on private property, where there is no connecting public thoroughfare, mill, market, church or limekiln, and, passing through private property, ends at the distance of one hundred and forty-four perches from

the turnpike, without any where connecting with any public road; and that, by reason of these premises, the obstructed road is not a public highway. The replication to this plea states, substantially, that the road in question, was opened from Standiford's gate to the turnpike, on a distinct petition therefor; that it had been used, with the assent of the defendant, as a public road for twenty years; that there were limekilns in the vicinity of Standiford's gate; and that the public had means of access, both from the Abingdon road and the turnpike, to the road between Standiford's gate and Berry's house. To this replication the defendant filed a demurrer, which was sustained and judgment entered accordingly.

The effect of the demurrer was to bring all the pleadings into review, and it was the duty of the Court below, as it is ours here, to pronounce against the party guilty of the first error. We think it proper however, before disposing of the case on the pleadings, to state briefly our views on the question as to the character of the road, to which the pleadings refer. Assuming that it was opened from Standiford's gate to the turnpike, as alleged in the replication, we are of opinion that it should be taken and considered as a public road, and that the willful obstruction of it would constitute an indictable offence. The county commissioners had authority, under the Act of 1822, ch. 18, to open, on petition, any new road which in their opinion would conduce to the advantage and convenience of the public; and, we think, whether a supervisor is appointed or not, that a road, opened from a common thoroughfare, in virtue of that authority, is a public road in contemplation of the Act, even if it does not connect with another highway, nor lead to a mill, market or church. A less liberal construction of the Act, would tend, in some measure, to defeat the purpose contemplated by it. It is true, however, that a road, to which the public can have no access by a public highway, cannot in the nature of things

be public, and at most would serve only the purposes of private convenience.

The offence charged in the first count of this indictment is the obstruction of a road, leading from Standiford's gate to Berry's house; and in the second, the obstruction of a road, leading from Standiford's gate toward the turnpike. The plea, after stating by way of inducement, that the road commenced and ended on private property, without connecting with any public thoroughfare, denies that it is a public road. The replication answers that the road was opened from Standiford's gate to the turnpike, and that is a public road. We think this averment of the replication is a clear departure from the indictment. The statement, that the road was opened from the gate to the turnpike, varies the case, the defendant was called to answer, in a most important particular. The indictment describes the road not as leading to, but only toward the turnpike. The defect thus appearing in the replication, while sufficient to sustain the demurrer, leads us to consider the relative question as to the sufficiency of the indictment. The general rule is, "that where the Act is not in itself necessarily unlawful, but becomes so by its peculiar circumstances and relations, all the matters must be set forth in which its illegality consists." 1 *Chitty's Crim. Law*, 228. The willful obstruction of a road or way, constitutes an indictable offence only when the road or way is public, and the obstruction tends to the inconvenience of the common right to use it. Here, the indictment charges, as an offence, the obstruction of a road which, as described, does not appear to have been a public road. The connection of the road with some other common thoroughfare, by means of which the public could have access to it, was a necessary element of the offence charged, and it should have been shown with certainty, so that the Court could have seen that the indictment was bad upon a sufficient case. And especially was this necessary to inform the defendant of what he had to answer, as well as to enable him to plead the acquittal or conviction

to any subsequent indictment. The indictment should have shown that the road, obstructed, connected with, and was accessible from a public highway. As that was not done we must affirm the judgment.

*Judgment affirmed.*

(Decided June 1st, 1864.)